Good morning and may it please the court. My name is Susan Oxford. I represent the Equal Employment Opportunity Commission as appellant in this matter. EEOC acted reasonably when it filed this lawsuit. It acted reasonably when it continued to litigate this lawsuit and the district court ignored Christiansburg's mandate, not to engage in post hoc reasoning when the district court imposed fees based largely almost exclusively on the court's finding that the court's dismissal based on latches. At the outset, although we did not raise this issue below, we urge this court to acknowledge that the district court erred as a matter of law in even considering Propak's affirmative defense of latches because latches is generally not available as a affirmative defense against the government. Right, but why are we talking about latches here? You didn't appeal the latches determination and the district court rested its attorney's fee award on whether the EEOC acted unreasonably, page 10 of its order, acted unreasonably by initiating litigation against Propak after an eight-year, well actually it was last, but the court said eight-year investigation. And so why are we talking about latches? The And you never appealed the latches determination on the merits. The attorney's fees was based on whether you reasonably acted by initiating the litigation against Propak, was it not? And the question of reasonableness, whether our filing the lawsuit was reasonable and continuing to litigate the lawsuit was reasonable. The only arguments Propak ever raised and the only issues the was whether we were reasonable in pursuing this notwithstanding that Propak might assert an affirmative defense of latches and then ultimately did. That's the only basis on which the court assessed reasonableness here. This is not a case about whether EEOC had sufficient evidence before it filed suit to believe that there was actually national origin discrimination. But the whole thing is you get hung up on the notion on the particular nomenclature here or the word of latches, but the conclusion, a conclusion that a delay was unreasonable or that a case was litigated unreasonable, unreasonably would stand as an independent conclusion, would it not? So I think one of the just the really difficult threshold issues is the one Judge Keenan pointed out and that is the dismissal of the earlier appeal and you're kind of stuck with the district court's conclusion, aren't you? We are not because the fees award requires the court to engage in an entirely different analysis and what is a little confusing here is that the word reasonable or unreasonable appears in both standards, both in the question of latches, it's one of the two elements that a defendant must establish, and in the question of fees because it's one of the bases in which the court said the limited circumstances in which courts could be imposed on a losing Title VII plaintiff and that would be that the lawsuit was unreasonable. Now here the... Well that the delay was unreasonable, right? No, well Christian Berg says that the fees can be imposed if the lawsuit was unreasonable, it could be unreasonable on the merits but that was never raised by anyone or addressed by the court. So then we look at the only issue that the court ever considered. Was it unreasonable for us to pursue this case because there was a potential latches defense which PROPEC ultimately did raise? You're almost arguing for something close to a per se rule that, you know, if this delay isn't unreasonable, aren't we getting very close to a per se rule that you would never, under any circumstances, no matter how dilatory the conduct of the litigation was, that you can never be subject to any sort of attorney's fees? Absolutely not. Every case stands on its own merits. But I've never seen one quite this bad. In terms of what, your honor? In terms of what the district court was documented history of extended delay, I really, I mean, I'm willing to cut you a reasonable amount of slack because I know that you have an important mission involved and I know that the EEOC has an investigative division and it has a with that and and I also am trying to be cognizant of the fact that you have a backlog and probably really always have a very severe backlog so you've got a lot of different cases to consider at the same time and and so I think those are mitigating factors but there still comes a point where it just gets to be too much. Latches requires two elements to be established. Both have to be present. Well, why are you talking about latches? Because that is the basis on which the court believed EEOC acted unreasonably, that we pursued... Well, now show me, if you would, in the court's order dealing with attorney's fees. The court was initiating the litigation, didn't it? Right, and it examined whether we were unreasonable in initiating the litigation by looking at the very same factors that PROPEC had argued established the latches defense. Right, but the court had a different lens. The court was looking through a different lens in making its award of attorney's fees and and perhaps you could be specific and answer the question, where in there, where is there any evidence in the record supporting your contention that you were able to locate claimants who would be entitled to monetary relief? I'd be happy to put that up. In the chart that the EEOC provided to the district court that has a detailed chronology of the investigation. Okay, where is that? That begins on page JA 257 and throughout that, and it might take me a minute to find the specific references, but we indicate where we had spoken to potential claimants and where we had potential claimants, but anybody who was entitled to monetary relief. Where is there any evidence in this record that you had identified particular people who were entitled to monetary relief? That's what we mean by potential claimants and in our view they're entitled to relief until the... So you just say that in general, you don't have to... It's important to remember... There were just potential claimants out there, but that doesn't tell me that there were specific individuals that you had assessed as being entitled to monetary relief. And that's where it's important to remember the procedural context in which this came before the court. PROPEC filed a motion for summary judgment. The court asked PROPEC if it wanted to engage in any discovery and PROPEC said no. It declined any discovery. EEOC requested discovery and was given discovery on the basis about how, if at all, the company was prejudiced by any delay in the EEOC's investigation, but PROPEC chose not to engage in discovery on what EEOC set forth and by the time PROPEC filed its motion for summary judgment and answered that question about discovery, this was already in the record, this chart we're looking at now, in which EEOC identified various dates on which we spoke to potential claimants. Potential claimants, that's just a bland reference. I guess what I'm getting at is I'm trying to figure out when you filed this suit what you thought you possibly could hope to accomplish. The plant had been closed, the managers were off, someone who knows where, the employees, you didn't, there were no particular employees that you knew or at least the record doesn't support that there were identified employees who were entitled to monetary relief. So what could you have possibly attempted to accomplish? What were you thinking when you filed the complaint that you were going to be able to do? Injunctive remedy wasn't going to work, the plant was closed. So what reason was this litigation filed as supported by this record? This litigation was filed to obtain back pay damages for individuals who had applied for jobs and been denied their jobs because they were not Hispanic. Right, but had you, is there anything in this record that shows that you had identified individuals? You said you spoke to potential claimants, but that doesn't support that there actually were people that you had ascertained were eligible for relief. And if it was EEOC's burden to disprove latches, perhaps we would have had to offer more than we did, but for summary judgment purposes where what we allege is assumed to be true and PROPEC chose not to challenge or test that on JA 263, for instance. What were you planning to accomplish when you filed the damages that you have no idea that there were, or we don't have any idea that there were any, you'd ascertained that any identifiable individual. On JA 263 there are two entries and this is just an example, there are more in this eight-page chronology. Interview notes which we've identified as privileged where we spoke to potential class members and there are other times when we did the same and they're they're indicated throughout this eight-page. I guess what we're doing is quibbling a little here and maybe I don't understand and Ms. Oxford maybe you can help me then. You're saying it's just enough to say you spoke to potential people. When we filed this lawsuit. You don't have to say you ascertained that some of these potential people in fact did have claims that could be litigated successfully. That is correct because whether or not we had a factual basis for filing this lawsuit, a sufficient basis was never tested, it was never challenged by PROPEC, it was never tested. The court acknowledged that we had identified potential claimants in the early pages of its decisions and then later said the class no longer existed and it was unclear or doubtful that EEOC could find these people. There's no basis for that. What we're contesting is an award of attorney's fees and you you know rightly I think refer to the Christian Berg decision but there's you know another line of Supreme Court decisions which says the one thing we don't want is a second major litigation over attorney's fees and that's what we have here and the district court order on the attorney's fees, he didn't just brush it off. The amount isn't even in dispute and he made about as careful a set of findings on the point of attorney's fees as I've seen district courts make. Now you can dispute whether the time prior to the initiation of suit was six and a half years or whether it was eight years or whatever but this is a very careful district court order and he meticulously goes through the timeline of the case and documents all those periods where the case languishes and where it just seems to die and if this order is is insufficient and this record of delay is insufficient aren't we taking away from district courts one of their mechanisms of control which is in order to for them to have a reasonable amount of authority over the litigants before them and over the case they need to they need to be the ones because they've lived with the case to have some discretion in that attorney's fee award that's what the standard of review does and so if we reverse on this not only we'd be generating more appeals for ourselves but we'd be pulling a rug out from under district judges who've lived with the long time and who in this case there's nothing careless about this order this is from a judge who's been with the case for three years not the entirety of it but he's been with it for three years going through the each period and documenting periods of delay now what what is wrong with that your honor there are a number of things that are very wrong with this there are legal errors which we think are very critical for this court to recognize and reverse and there are clear factual errors starting on page 18 of our reply brief we explain how the district court aired in the way it analyzed our investigation it took the position that it could second-guess not just how much how many months or weeks might have passed between one step in another but even the sequence of investigation that is completely inconsistent with this court's jurisprudence to defer to the EOC in the conduct of its investigative matters that again it seems to go to the merits of whether latches applied in this case and I guess your point is that there's a separate analysis that the district court needs to conduct with respect to the attorney fee issues not enough to say maybe it is maybe this is the case where these issues tend to merge as Wilkins seemed to suggest but there's a separate analysis whether or not your client acted unreasonably with respect to the litigation that's been decided the court decided that the latches defense applied but then there's a separate question of whether or not the district court reasoned correctly that your that that that your client had a reasonable basis for asserting the latches defense applied that's a separate issue absolutely and that's what you're saying is that the court ignored or didn't apply the correct test that's exactly what we're but judge Wilkinson seems to be saying in this case that effectively those tests merge because you have such an egregious set of facts here that the result wouldn't change even if the correct test were to be applied my time is up may I answer the question the first of all the question about whether our lawsuit was unreasonable and whether that is tied into the factors on which the court found the delay was unreasonable that only goes to one prong of the latches defense so these the second question would be doesn't merge entirely because for our for it to be known that it would be a certainty we would lose on the latches defense that would make it unreasonable if it was a certainty but in fact it wasn't because a defendant must also establish prejudice and on these facts this court has never issued a decision that would say on these facts were pro pack never attempted to locate the witness that says it was so critical and the company not be prejudiced when as a result of the delay the plant is closed and the in other circuits the Seventh Circuit has essentially ruled that way but this court in radiator specialty said that you cannot just assume prejudice it can't be based on general allegations it has to be proved specifically they were talking of there's no general allegation the plant is closed the the the relevant witnesses are who knows where exactly because I never tried to find them and the Third Circuit said if you haven't even tried to find your witnesses you cannot claim prejudice based on their unavailability they're not unavailable but the district court found as a matter of fact did it not in its judgment order that you couldn't even identify the class of victims how can it be and you can't even if we're bound by that factual finding that the class of victims could not be identified then how could the litigation have been reasonably initiated didn't even have a class of victims go back and just call the court's attention the fact that in our reply brief not only do we start at page 18 to talk about how the court erroneously critiqued our investigation but starting at page 24 we list specific factual answer this question and how do you get beyond that factual finding at the bottom of page 10 in the district courts order we identified individuals who would be members of our class and had had it ever come to the point where Propec asked us in interrogatories to identify who our class members were the individuals we spoke to at various points that are all noted in the 8-page chronology those are the individuals we had identified but for latches purposes it is not EEOC's burden to disprove that latches I'm talking about is it reasonable to file a lawsuit if you don't even know who your victims are correct we knew who our victims were the court said you didn't I know the court was a plainly clearly erroneous and tell us why that is clearly erroneous if we we did not identify people by name because we were never asked to but we listed in our individual potential individual they were they were the members there are potential claimant until the court orders money to be paid to them then they become a claimant we had identified these individuals we were never asked to do more than what we did on summary judgment the court was obligated to a take as true our representation that we identified individuals and in fact take is true it gives you the benefit of entrances but you're you're reciting a 12v6 for summary judgment this is the evidence we put into the record for summary judgment purposes and that is that we found the assertion that it's all true you have to create a genuine issue of fact and ProPAC did not say that we couldn't identify individuals I believe that yes and that is when you delay as long as you do in this case doesn't it disadvantage the plaintiff side of the case because doesn't the I mean doesn't the plaintiff have the same interest that the defendant does and and having the case prosecuted and having some if there is a remedy at the end of the road having that remedy put in place I you know I you know I come again to the fact that I I think Congress has imbued you with a very important mission but if if you delay this long and proceed the way the litigation has here doesn't this prejudice doesn't this harm the very people whom Congress wanted you to protect I mean how long does mr. talk about the plaintiffs here are going to be prejudice who knows where they're going to be some of it may not even be alive if the litigation goes on as long as this does don't they have in this instance the same interest and prompt adjudication that a defendant there are many natural pressures that would keep the EEOC moving forward as quickly as possible we complete every in this investigation as quickly as possible and we know that evidence can disappear witnesses can become unavailable and and memories can fade so we have every reason to complete investigations as quickly as possible and to get into court and we did that here and that this case is not going forward so we don't need to worry yeah one question I have this Oxford is are all these time lapses where the the case just languishes for months on end and in some cases for over a year before anything at all happens and there's a these periods where the relevant interview where the relevant people the supervisors and the plaintiff himself and some of the other relevant witnesses are never talked to for just months on an end and the whole question of class certification the I guess the district court made a finding that you decided to proceed on this as a class action but it wasn't even the defendant wasn't even informed for a period of years before that decision was even communicated to the defendant I mean that that can't be the way litigation is is supposed to proceed your honor that is another one of the actual errors of the district court that's clearly erroneous that's refuted by the record there is pro pack itself did not even allege that it had no notice this was a class investigation why these things were clearly erroneous and I couldn't that seemed to me that the district court was correct also befend be pending before this court is EOC's motion a dual motion to supplement the record with three documents that were before the district court and that pro pack received and responded to the three requests for information and for this court to take judicial notice of three other documents that are a matter of public record and those documents show that throughout the entire investigation was well aware that we were investigating class allegations of non-hiring based on national origin pro pack responded to that pro pack gave us over 10,000 documents that had nothing to do with mr. Quintos his individual claim that as a manager he was fired after two months these only had to do with EOC's class investigation pro pack received our request for information which the dates of which are detailed in the same chronology and which documents which were before the district court they received those they responded to them that's why they gave us 10,000 documents to talk about the hiring decisions that they made the individuals who applied and those who were selected in those who were rejected the only reference to you thank you very much may it please the court John Cole for pro pack logistics contrary to the impression given by the EEOC in their very argued buried arguments this appeal concerns one very narrow issue whether the district court abused its discretion when it awarded attorneys fees pro pack notably there are two ways in which this court can affirm the award of attorneys fees first that this court must affirm if it field finds that the trial court did not abuse its discretion in concluding that the litigation was the initiation litigation was unreasonable and second this court must affirm if it finds that the trial court did not abuse its discretion in concluding that the continued prosecution of the lawsuit was unreasonable now a trial trial court miss Cole discretion that that suggests that in every case where a district judge finds a laches defense that is a matter of law a plaintiff is entitled to attorneys fees that's not your position is it that's not our position well then that wasn't that I mean that's precisely the point right doesn't the district court have to segregate its ruling on the merits and separate that not entirely because the facts are relevant to the issue of whether or not it was reasonable to oppose the latches defense but that's a separate inquiry and I guess my concern is whether or not the did and the district judge was very thorough there's no question about it but I'm concerned about whether or not the court actually box those in its separate compartments as it was required to do I think the court did your honor it's correctly cited the standard the title seven fee statute it understood it had discretion it's cited christian berg and the standard frivolous unreasonable or groundless it's set a great stakes out in the standard this court has pronounced in great stakes whether the EEOC knew or should have known when initiated the litigation that it was unreasonable and then it went ahead implied applied the facts to those standards it held that the law of the case was that the EEOC's delay in the investigation was unreasonable and to that that delay prejudice propack but did not say that the law of the case was latches therefore I must award fees understood it had discretion and it went through the standard under christian berg and great stakes and looked at the various factors and under the totality of the circumstances the abundance of factors it awarded freeze under his questions and you you can't just say well lashes attorneys fees you you have to unpack it and yeah the I guess your response here is in the right at the in the investigation was unreasonable and the propack with maturity prejudice thereby but interestingly enough the district court doesn't just say oh well it's the law of the case that's correct the order goes on to explain what if it was strictly latches or law of the case the district court wouldn't even have to do but the district court goes on at great length to document why in its view the pursuit of the litigation the investigation and the pursuit one suit was filed was unreasonable so I think that there was an independent conclusion even in view of the law of the case it was an independent analysis undertaken in an independent inclusion taken in it it was under the rubric of unreasonableness and what's interesting to me is in reading this district court order maybe I'm wrong it certainly wasn't the emphasis of the district but I can't find that the word latches is even used in this in this district court order I look through at least the critical pages of the discussion which run from page six of the district court order to probably 12 or 13 I don't find that the word latches was used but it what it seemed to be doing was I'm discussing it under the heading of unreasonableness and I think that was what he had to do latches thing is it's it's one thing but I've maybe a bit of a red herring in the case because I don't know that I don't know that latches can be interposed against the sovereign I don't know there's a big debate about that I'm just not sure we need to enter it both because the EEOC dismissed the earlier appeal and also because the way I look at the attorney's fees thing and Christiansburg it's a it's more of a discussion of unreasonableness on the I agree your honor it's Christiansburg itself doesn't mention latches Christian Berg I agree your honor I agree with that Christian Berg focuses on the frivolousness unreasonableness or groundless of the plaintiff's claim or that the claim became frivolous unreasonable or groundless after I lost it was a little bit of a red herring we got all everybody was getting all caught up in the label and and when I read the order I didn't see latches and then when I was when I read Christiansburg I didn't see a whole lot of discussion about latches and yet the briefs were just all on fire about latches and well well our position it certainly has been that judge Reitinger's ruling was independent of the latches summary judgment independent not constrained by that now we did argue in our motion for fee I tried to push the judge to say because we prevailed on latches well he does refer on page 12 of the order to latches and he does it in the limited context of saying there is prejudice to you can't say that he makes no reference to latches limited reference right he makes he makes a limited reference with regard to he did reference that he that the prior ruling he ruled previously that he was guilty of latches and that was that summary judgment order that was a final order BSC initially appealed it what do you think about the allegation that contention that the Sox was making that the court's findings were clearly erroneous I don't think there's any support for that that argument in the record the factual findings why do you think they were correct they were supported by the record all the factual to me what the EEOC is doing is basically just disagreeing with the judge that that doesn't to me that doesn't show abuse of discretion or clearly you can't claim prejudice if you made no attempt to locate that's an inaccurate statement that we made no attempt to locate the witnesses when the EEOC deposed conducted at rule 30b6 of PROPAC the deponent said essentially that it didn't know where to begin that it thought about it but the plant had closed in 2008 all the employees were terminated the managers that were in charge of the hiring decisions had left in 05 and 06 the allegations concerned alleged discriminaties in 02 and 04 and it knew not where to begin the records they followed their document retention poly there weren't any personnel records plant was closed managers had long gone all the employees were gone why did you hand them 10,000 pages of documents was that necessary that was before I represented the client they tried to comply with the investigation but the investigation I've never seen anything like that nearly seven years I've been doing this a long time and even the EEOC chronology notes significant periods of where nothing was done to further the investigation I mean essentially radio silence just enough no communication nothing and that's their own chronology and even the EEOC admitted that whether it was six and a half years or eight years close to seven your honor I think what the judge was referring to when he mentioned eight years was from the time the initial charge was filed in 03 until the time the depositions were conducted in 2011 there's one other question I want to ask you because miss Oxford brought it up she says you are really aware of the class status of the action you say well they made a decision and we didn't learn of it until four years later and she she says no you knew it all along what what the record shows that the first notification the EEOC gave ProPact that it was pursuing this as a class case was September 2008 the records very firm on that yes yes your honor and he was correct that's an accurate again it worries me because with a delay of this length it seems to me that both sides and we're talking here about prejudice to the defendant and that should certainly be pursued because that's the element that you need in attorneys fees but as a practical matter also it's not just the defendant that's prejudice what what concerns me is these these long long delays if you were a plaintiff and we're bringing a suit or the EEOC was bringing a suit on your behalf as has happened here and they were in charge of this litigation it would seem to me to work to the detriment of plaintiffs and defendants to have a delay stretch out at this length I absolutely agree your honor you look at Quintus the charging party he got so frustrated with the EEOC asked him for separate occasions for an his right to sue letter and finally he got one after four attempts you know and being basically ignored by the EEOC he got a right to sue and filed his own lawsuit in and that case was dismissed but and so even even the charging party got frustrated in this instance and it just did it was the hardship on the it really fought the fight for a long long time and many of my clients would not have done that it fought the EEOC on this investigation it fought Quintus in his lawsuit that was dismissed it had to defend against the Department of Justice related investigation that was found to be with that's correct your they do have an important mission and they do have a horrific backlog and they do have sometimes in order for an agency to act but have to get permission from this department and this department and there's a bifurcation often between an investigative an investigative function and a litigating function and all of those are our agencies it just our agencies do a little bit more slack than an ordinary litigant because of these I don't know they have more resources but I don't believe so I mean why not why wouldn't an agency well Christian Berg and probably an agency under Christiansberg be be cut a little bit more slack than a private litigant Christian Berg doesn't make that distinction between an agency and a regular plaintiff and I don't think we should give them slack to promote bringing unreasonable lawsuits which this case clearly was I mean we're not is there any other case out there there any other cases any other cases out there with facts that are quite like these I didn't find any your honor this was a very unique case with particular facts to it there's no plant no employees no records no managers and an investigation going on for almost any other cases where there was a delay of this length before bringing suit or we we cited some cases in our summary judgment brief where there were cases less long than our case almost sui generis in its fact it could be I mean it's it's I don't think the court should be concerned about here in having the implication that latches equal speech because the court didn't go there and and but it was an egregious case and in the court did independently go through the factors that led to it to conclude in exercising his discretion that the prosecution of the case was unreasonable and it's continued litigation of the case was unreasonable after it got the discovery it insisted upon the judge appropriately stated that the EEOC it was reaffirmed for the EEOC what it already knew or should have known that the ProPAC was clear of the prejudice just no facility no employees and when you say it when you say unreasonable you're talking unreasonable with respect to delay and with respect to the sheer lack of merit because there could be a case where the plaintiff has a meritorious claim there's evidence to support it but the defendant has been prejudiced in asserting defenses because of the delay that's this case seems to implicate both of these separate wrongs that is a lack of merit for the reasons judge Keenan questioned the EEOC about and on top of that the delay is that is that your point yeah I think yes your honor I think that accurately sums up our argument on the delay the delay was unreasonable and the continued prosecution was unreasonable also and I think but to come back at the bottom of it all to come back to where judge Keenan started who are the people that are going to recover exactly it was uncertain whether any potential discriminate cheese could even be located so you know in your view the delay the prejudice and the absence of delay prejudice and just no merit to the case from the outset okay you know thank you your honor thank you may I have some rebuttal time may I have rebuttal oh of course EEOC was never asked to identify its claimants by anyone not by PROPAC not by the court and since this came before the court on a motion to dismiss for latches it was PROPAC's affirmative obligation to prove its defense we were never asked and never required to identify our claimants the court wouldn't you want to do that in the natural course if we move to the merits if we move beyond latches and move to the merits of the case then PROPAC would undoubtedly have served interrogatories on us asking us to identify the individuals on whose behalf we sought relief and we would have identified those individuals by name then but at this posture under summary judgment what's in the record is completely adequate to demonstrate that EEOC knew there were claimants that on whose behalf we would seek back pay well at this even at this date can you identify a single concrete individual who had a we have the records of the individuals we spoke to back then I don't know if we we haven't looked for them since this case has now been in litigation for four plus years beyond that on this separate question of latches and so we haven't continued to keep up with the location of these individuals but we have interview notes that we identify that we notate our confidential here our privileged that have the names and contact information for those individuals that's not the issue before this court however and I want to just really focus the court's attention if I may on what are the possible grounds for a court to award fees based on unreasonableness if you look at most of the decisions awarding fees to plaintiffs or this court has several times reversed fees that have been awarded against plain losing plaintiffs you look at the facts that would establish the discrimination claim and this court has said where a plaintiff lost on their title 7 claim but they had offered some evidence in support of it even though not enough to prevail this court has reversed attorneys fees this court has affirmed fees only where there was absolutely no evidence that's not this case though because we're not looking at the merit this case didn't only go off on that this case went off on the question and the prejudice that arose from the delay plus questions about the underlying merit and where where those people who would benefit from a judgment on the merit that's where I'd like to issue with your honor on this case went off on the question of whether ProPAC could establish its affirmative defense of latches that's the basis on which it was dismissed and when the court then turned to examine whether fees should be awarded because the UC's case was unreasonable the court could not properly look at the question of reason was as in a prudential consideration of prosecutorial discretion about whether to pursue this case or not that could not be the basis for the court's award of fees so to the extent the court thought that perhaps we shouldn't go after a company that has quote that is still operating but not at that location we have many times around the country sued a company that closed at a particular location or had closed entirely because of discrimination that happened before the company closed and there's nothing wrong with our doing that we perfectly have the legal right to do that we have sought back pay relief for individuals who couldn't get in statement because the operations were closed there's nothing wrong with seeking back pay for those individuals so the court could have thought that could not have thought that we were unreasonable for going after a company that had closed one of its many nationwide operations no we didn't but it thought you were unreasonable for going after someone when you didn't know who the victims were and the court was just wrong on that that's plainly erroneous but if you look at Christiansburg and compare that you you said the court was clearly erroneous and that's it couldn't have been that bad I if your honor would look at their record carefully you would see that it was in fact that bad the court just made up facts that it actually acknowledged things as true and then found the contrary in its decision with no basis in the record whatsoever if I could just end by noting these similarities with the Christiansburg case that case was race discrimination claim against the Christiansburg garment company but because EEOC brought suit in 1974 relying on a charge that had already been closed when we got our litigation authority in 1972 and the district court said we were too late to sue on behalf of that charging party that the statutory authority to sue didn't extend to that and this court affirmed but the district court denied fees and this court affirmed on that basis to in the Supreme Court said that although we were absolutely wrong in our interpretation of the statute it was a question that warranted judicial judicial determination and that is the same thing with latches there is no decision of this court that would have signaled to EEOC that we should have known it was unreasonable to pursue this case on these facts no decision of this aren't we in the middle of a second major litigation all over attorneys fees which the district which the Supreme Court said is the very thing we don't want here we are the court made that comment in response to the the amount of fees and said there shouldn't be a second major litigation around the accounting and the and the allocation of the exact amount pardon that's correct and so here but the court never the Supreme Court has never said that parties should not be allowed to pursue the legal basis on which attorneys fees were improperly imposed and that is what we'd like asked your court to look at our briefs again where we outline numerous legal errors as well as clear clearly erroneous facts and then outright abuse of the district courts but it's but but basically the decision whether to award attorneys fees as well as an amount it's kind of a judgment call both of them are judgment calls and you can't see the Supreme Court saying well we it's okay to have a second major litigation over whether attorneys fees should be awarded but we just don't want a second we just don't want a second litigation over amount I mean the the point is one of the one of the chief things that district judge does is allocate and award attorneys fees it's it's it's one of a number of mechanisms by which district courts quite literally maintain control of their courts it doesn't mean they can be arbitrary about it that's the thing you don't want them just snapping off judgments of being arbitrary but district judge here I think we all recognize that it's he's the conscientious job who wasn't he trying to do he wasn't trying to rule from the bench or snap out of one-page order or or whatever as conscientious as he may have been he did not he did not correctly like Christiansburg's very limited standards for awarding fees against a losing plaintiff we thank you so much this honor the court stands adjourned until tomorrow morning at 930 guys see the United States and it's on the report
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Albert Diaz